# In the United States Court of Federal Claims

No. 08-326 T
Filed: July 22, 2010
**TO BE PUBLISHED**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |  |
|---|---|---|
| RILEY A. PENDERGRAFT, | * | Motion For Summary Judgment, |
| JOYCE E. PENDERGRAFT, | * |    RCFC 56(c); |
|  | * | Tucker Act, |
|     Plaintiffs, | * |    28 U.S.C. § 1491(a)(1); |
|  | * | 26 C.F.R. § 1.6001-1(a); |
| v. | * | 26 U.S.C. §§ 61(a), 162(a), 212(1), |
|  | * |    6001, 6402, 6511(a), 6532(a), |
| THE UNITED STATES, | * |    7422(a). |
|  | * |  |
|     Defendant. | * |  |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Anthony V. Diosdi**, Law Offices of Stephen Moskowitz, LLP, San Francisco, California, Counsel for Plaintiffs.

**Carl D. Wasserman**, United States Department of Justice, Tax Division, Washington, D.C., Counsel for Defendant.

### MEMORANDUM OPINION AND ORDER

**Braden,** *Judge*.

**I.     RELEVANT FACTS.[1]**

On April 14, 2002, Riley and Joyce Pendergraft ("Plaintiffs") filed a joint zero-taxable income return Form 1040EZ for the tax year 2001. DUF ¶ 19; Gov't Ex. 6. On October 15, 2002, Plaintiffs filed a revised joint tax return Form 1040 claiming an adjusted gross income of $310,701 for the 2001 tax year. Gov't Ex. 33. On July 13, 2004, the Internal Revenue Service ("IRS") examined Plaintiffs' 2001 federal income tax return. DUF ¶ 29; Gov't Ex. 20. The IRS adjusted Plaintiffs' gross income upwards by $101,530. DUF ¶ 38.

---

[1] The relevant facts were derived from: Plaintiffs' May 2, 2008 Complaint ("Compl."); Exhibits A-D in support of the Complaint ("Compl. Ex. A-D"); Plaintiffs' February 16, 2010 Statement Of Undisputed Material Facts ("PUF"); the Government's March 22, 2010 Proposed Findings Of Uncontroverted Facts ("DUF"); and the Government's March 23, 2010 Exhibits ("Gov't Ex.").

On February 3, 2005, Plaintiffs executed a "Consent to Assessment and Collection" (IRS Form 4549) for tax year 2001, accepting the $101,530 adjustment and agreeing to pay $65,832 ($57,067 in additional tax plus $8,765 in interest). DUF ¶ 39; Gov't Ex. 16. On August 11, 2005, Plaintiffs paid this amount in full. PUF ¶ 7.

On April 10, 2006, Plaintiffs filed a Form 1040X (Amended U.S. Individual Income Tax Return), seeking a tax refund for the 2001 tax year in the amount of $20,634. Compl. Ex. B. Therein, Plaintiffs asserted entitlement to deduct $7,054.14 in commission expenses that arose from their furniture business[2] and that the IRS incorrectly characterized a $35,103.27 bank deposit from a mortgage refinance as taxable income. PUF ¶¶ 9, 11. On March 13, 2008, the IRS denied this refund claim, with the following explanation regarding the commission expenses:

> Since you did not provide billing invoices, form 1099, and statements from lenders which shows their contact information and acknowledges the disbursements to them was their taxable income, we have disallowed your claim regarding Schedule C commissions.

Compl. Ex. C.

Regarding the bank deposit claim, the IRS advised Plaintiffs that:

> You did not document that your share of the loan proceeds were deposited into the accounts considered in determining gross receipts. Rather it appears that your share of the loan proceeds were deposited into one of the accounts not provided to the examining agent which she requested. Since you have not provided all the bank statements for that account, verified all deposits into that account were non-taxable, and that transfers were made from that account into the accounts considered in determining gross receipts, we have disallowed your claim reduction regarding Schedule C gross receipts.

*Id.*

## II. PROCEDURAL HISTORY.

On May 2, 2008, Plaintiffs filed a Complaint in the United States Court of Federal Claims, pursuant to 26 U.S.C. § 6402 (2006), claiming a refund in the amount of $20,634 for the tax year 2001 (Compl. ¶¶ 3, 15, 17), together with Complaint Exhibits A-D.

On July 1, 2008, the Government filed an Answer ("Gov't Ans."). On August 21, 2008, the parties submitted a Joint Preliminary Status Report ("8/21/08 JPSR"), wherein the parties "agree[d] that separate proceedings on the questions of liability and damages . . . should be

---

[2] Plaintiffs have operated a furniture sales business in Northern California for more than 25 years. DUF ¶ 1. Prior to 1997, the business was operated as NHUSS, Inc. DUF ¶ 2. In 1997, Plaintiffs dissolved NHUSS, Inc. and thereafter operated the business through the NHUSS Trust. DUF ¶ 2a. Plaintiffs established six trusts, including the NHUSS Trust, into which Plaintiffs deposited gross receipts from the furniture sales business. DUF ¶¶ 4, 5.

unnecessary," but "ask[ed] the Court to determine liability first, and, if liability is found, permit them a reasonable period of time within which to attempt to agree on the amount of a money judgment." 8/21/08 JPSR at 1-2. On September 10, 2008, the parties participated in a telephone status conference with the Honorable Thomas M. Wheeler. On October 7, 2008, the case was transferred to the undersigned judge.

* * *

On January 26, 2010, Plaintiffs filed a Memorandum Of Contentions Of Fact And Law ("Pls. Mem."), together with Exhibits 1-9 ("Pls. Mem. Ex. 1-9"). On February 4, 2010, the court convened a telephone status conference with the parties.

On February 16, 2010, Plaintiffs filed a Motion For Summary Judgment ("Pls. Mot."), together with Plaintiffs' Statement Of Undisputed Material Facts and Plaintiffs' Exhibits 1-10 ("Pls. Mot. Ex. 1-10"). On February 22, 2010, the court convened another telephone status conference, wherein Plaintiffs requested the court first to adjudicate Plaintiffs' February 16, 2010 Motion For Summary Judgment before proceeding to trial. The court granted that request. *See* Order, *Pendergraft* v. *United States*, No. 08-326T (Fed. Cl. Feb. 22, 2010).

On March 19, 2010, the Government filed a Response To Plaintiffs' Proposed Findings Of Uncontroverted Fact ("Gov't Resp."). On March 22, 2010, the Government filed Proposed Findings Of Uncontroverted Fact, and an Opposition To Plaintiffs' Motion For Summary Judgment And Cross-Motion Of The United States For Summary Judgment ("Gov't Opp. & Cross Mot."). On March 23, 2010, with leave of the court, the Government filed an Appendix to the Government's Cross-Motion containing Exhibits 1-38 ("Gov't Ex. 1-38"). *See* Order, *Pendergraft* v. *United States*, No. 08-326T (Fed. Cl. Mar. 23, 2010).

On April 8, 2010, Plaintiffs filed a Response To The Government's Proposed Findings Of Uncontroverted Facts ("Pls. Resp."), together with Exhibits A-M ("Pls. Resp. Ex. A-M"). On the same date, Plaintiffs also filed an Opposition To Defendant's Cross-Motion For Summary Judgment And Plaintiffs' Reply To Defendant's Opposition To Plaintiffs' Motion For Summary Judgment ("Pls. Reply"), including Exhibits A-H ("Pls. Reply Ex. A-H").

On April 30, 2010, the Government filed a Reply ("Gov't Reply") to Plaintiffs' April 8, 2010 Reply. The Government's Reply also contained Exhibits 39-43 ("Gov't Ex. 39-43").

**III.   DISCUSSION.**

    **A.   Jurisdiction.**

The United States Court of Federal Claims has jurisdiction under the Tucker Act, 28 U.S.C. § 1491 (2006), "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. . . . [T]he Act merely confers jurisdiction upon [the

United States Court of Federal Claims] whenever the substantive right exists." *United States* v. *Testan*, 424 U.S. 392, 398 (1976) (citations omitted).

Congress specifically authorized the United States Court of Federal Claims to adjudicate tax refund claims, if a taxpayer has paid the full assessed federal tax liability and timely filed a refund claim with the IRS stating the grounds for the claim. *See* 26 U.S.C. §§ 6511(a), 7422(a) (2006); *see also Shore* v. *United States*, 9 F.3d 1524, 1526 (Fed. Cir. 1993) (holding that a tax refund claim must be dismissed if the "principal tax deficiency has not been paid in full"). If the claim is denied by the IRS and the taxpayer timely files suit, the United States Court of Federal Claims has jurisdiction to adjudicate the tax refund claim. *See* 26 U.S.C. § 6532(a) (2006); *see also* 28 U.S.C. § 1346(a)(1) (2006).

In this case, Plaintiffs paid their assessed federal tax liability for tax year 2001 in full and timely filed a refund claim with the IRS that was denied. PUF ¶ 7; Compl. Ex. B. Thereafter, Plaintiffs filed a May 2, 2008 Complaint in the United States Court of Federal Claims that alleges Plaintiffs are entitled to a refund for overpayment on their taxes for tax year 2001, pursuant to 26 U.S.C. § 6402. Compl. ¶¶ 3, 15, 17. Since Plaintiffs properly have identified and pled an independent right to money damages, the United States Court of Federal Claims has jurisdiction to adjudicate Plaintiffs' tax refund claim.

**B. Standard For Decision On A Motion For Summary Judgment.**

On a motion for summary judgment, if there is no genuine issue as to any material fact, the moving party is entitled to judgment as a matter of law. *See Moden* v. *United States*, 404 F.3d 1335, 1342 (Fed. Cir. 2005) ("Summary judgment is only appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."); *see also* RCFC 56(c). Only genuine disputes as to material facts that might affect the outcome of the suit will preclude entry of summary judgment. *See Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) ("As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. . . . That is, while the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs."). The existence of "some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Id.* at 247-48. Therefore, to avoid summary judgment, the nonmoving party must put forth evidence sufficient for a reasonable fact-finder to return a verdict for that party. *Id.* at 248-50 (citations omitted).

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. *See Celotex Corp.* v. *Catrett*, 477 U.S. 317, 325 (1986) (holding the moving party must meet its burden "by 'showing' -- that is, pointing out to the [trial court] -- that there is an absence of evidence to support the nonmoving party's case"); *see also Riley & Ephriam Constr. Co.* v. *United States*, 408 F.3d 1369, 1371 (Fed. Cir. 2005) ("The moving party bears the burden of demonstrating the absence of a genuine issue of material fact."). Once the moving party demonstrates the absence of a genuine issue of material fact, however, the burden

shifts to the nonmoving party to show the existence of a genuine issue for trial. *See Novartis Corp.* v. *Ben Venue Labs*, 271 F.3d 1043, 1046 (Fed. Cir. 2001) (explaining that, once the movant has demonstrated the absence of a genuine issue of material fact, "the burden shifts to the nonmovant to designate specific facts showing that there is a genuine issue for trial").

A trial court is required to resolve all doubt over factual issues in favor of the nonmoving party. *See Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 587 (1987). All reasonable inferences and presumptions must be resolved in favor of the nonmoving party. *See Anderson*, 477 U.S. at 255; *see also Moden*, 404 F.3d at 1342 ("[A]ll justifiable inferences [are drawn] in favor of the party opposing summary judgment.").

### C. The Parties' Cross-Motions For Summary Judgment.

#### 1. Plaintiffs' February 16, 2010 Motion For Summary Judgment.

Plaintiffs argue that 26 U.S.C. § 162(a) allows "as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business," and 26 U.S.C. § 212(1) allows as a deduction expenses paid or incurred "for the production or collection of income." 26 U.S.C. §§ 162(a), 212(1) (2006). Therefore, the IRS improperly denied Plaintiffs' lawful deductions, in the amount of $7,054.14, for commissions that Plaintiffs paid in connection with the operation of their furniture business. Pls. Mot. at 4. This amount was paid in eight separate checks drawn from Plaintiffs' NHUSS Trust at the Bank of Santa Clara. *Id.* at 3. These checks are documented by Plaintiffs' checking account statement (Pls. Mot. Ex. 2) and Plaintiffs' account ledger/business log (Pls. Mot. Ex. 5).

Given that these commission payments are documented, recorded, and occurred as ordinary and necessary expenses paid or incurred for the production or collection of income, Plaintiffs contend that the IRS erred in denying these amounts as a deduction on Plaintiffs' 2001 tax return. Pls. Mot. at 6. Further, these commission payments cannot be characterized as "gross income," under 26 U.S.C. § 61(a) (2006), because Plaintiffs did not have an "undeniable accession to wealth," but acted as a conduit, passing payments received directly on to sales contractors. *Id.* (quoting *Commissioner* v. *Glenshaw Glass Co.*, 348 U.S. 426, 431 (1955) (defining taxable income as "instances of undeniable accessions to wealth, clearly realized, and over which the taxpayers have complete dominion")).

Plaintiffs also contend that the IRS erroneously classified $35,103.27 in non-taxable loan proceeds as gross income. *Id.* at 5. Plaintiff Riley Pendergraft, along with his brother Jeffrey Pendergraft, refinanced a loan they jointly held on a property in Scotts Valley, California. *Id.* at 4. Because of existing equity in the property, the refinancing resulted in repayment of the original loan, as well as a $70,206.54 surplus that was divided equally between Plaintiff and his brother. *Id.* at 5. The $70,206.54 amount initially was deposited on July 11, 2001 into an investment account that Jeffrey Pendergraft had with Kanaly Trust Company. *Id.*; *see also* Pls. Mot. Ex. 9 (July 11, 2001 Santa Cruz Title Company Letter to Riley Pendergraft). Plaintiff's half, $35,103.27, subsequently was transferred to his account on July 12, 2001. Pls. Mot. at 5; *see also* Pls. Mot. Ex. 3 (Jeffrey Pendergraft's Kanaly Trust Company Accounting Statement); Pls. Mot. Ex. 10 (July 12, 2001 Kanaly Trust Company Letter to Riley Pendergraft).

Since Plaintiff Riley Pendergraft is liable for repayment of this $35,103.27, it should not have been treated by the IRS as gross income. *Id.* at 7 (citing *United States* v. *Rochelle*, 384 F.2d 748, 751 (5th Cir. 1967) ("A loan does not in itself constitute income to the borrower, because whatever temporary economic benefit he derives from the use of the funds is offset by the corresponding obligation to repay them.")). In short, any increase in Plaintiffs' net worth generated by the loan must be offset by the corresponding decrease in net worth associated with the obligation to repay it. *Id.*

For these reasons, Plaintiffs' 2001 tax liability should have been reduced, because of the IRS's erroneous conclusions regarding the deductible commission payments and the non-taxable loan proceeds. *Id.* at 7-8.

### 2. The Government's March 22, 2010 Cross-Motion For Summary Judgment.

The Government highlights the fact that since 1997 Plaintiffs have "created a series of illegal trusts that they believed would enable them to avoid all income taxes." Gov't Opp. & Cross Mot. at 5. This is not the first time the IRS has had to re-examine Plaintiffs' tax returns. *Id.* In fact, Plaintiffs filed Form 1040EZ returns between 1998 and 2001 reporting zero taxable income, even though they had received substantial income. *Id.*; *see also NHUSS Trust* v. *Comm'r*, 90 T.C.M. (CCH) 374 (2005) (holding Plaintiffs liable for negligence penalties that arose as a result of the underpayment of taxes in 1999 and 2000). The instant refund claim is a continuation of Plaintiffs' "brazen" "tax-avoidance scheme." Gov't Opp. & Cross Mot. at 5; *see also id.* at 6-13 (characterizing Plaintiffs' previous "[s]ham [t]rust [s]tructure and 2005 Tax Court [l]itigation," and questioning Plaintiffs' 2001 tax return).

Section 6001 of the Internal Revenue Code[3] obligates the taxpayer to maintain proper books and records, and 26 C.F.R. § 1.6001-1(a) further directs the taxpayer to "keep such permanent books of account or records, including inventories, as are sufficient to establish the amount of gross income, deductions, credits, or other matters required to be shown by such person in any return of such tax or information." 26 C.F.R. § 1.6001-1(a). Plaintiffs, however, failed to maintain bank records, but claimed to have distributed these documents to their children, who either have discarded or destroyed them. Gov't Opp. & Cross Mot. at 15. In addition,

---

[3] 26 U.S.C. § 6001 (2006) states, in relevant part:

Every person liable for any tax imposed by this title, or for the collection thereof, shall keep such records, render such statements, make such returns, and comply with such rules and regulations as the Secretary may from time to time prescribe. Whenever in the judgment of the Secretary it is necessary, he may require any person, by notice served upon such person or by regulations, to make such returns, render such statements, or keep such records, as the Secretary deems sufficient to show whether or not such person is liable for tax under this title.

26 U.S.C. § 6001.

Plaintiffs have filed multiple amended tax returns for 2001 reporting different amounts of adjusted gross income, but have failed to submit a single W-2, Form 1099, pay stub, check, or any other credible piece of evidence to verify their income. *Id.* at 16-17. Plaintiffs' refund claim is solely based on "naked assertions of overpayment," because "[P]laintiffs have no idea what their proper tax liability for 2001 is, and their lack of records prevents them from ever establishing it." *Id.* at 16. As a result, Plaintiffs have failed to satisfy their burden of proof to establish an overpayment. *Id.* at 17.

The Government does not contend that funds received from a mortgage refinancing are taxable, but Plaintiffs have not demonstrated that the $35,103.27 Riley Pendergraft received from the refinancing ever was taxed. *Id.* at 18. Instead, Plaintiffs have produced the following "confusing" records: (1) a July 11, 2001, letter from the Santa Cruz Title Company to Riley Pendergraft, stating, "We have wired the sum of $70,206.54 into Jeff's Southwest Bank of Texas account, per your request;" (2) Jeffrey Pendergraft's bank statement with the Kanaly Trust Company, showing a cash disbursement of $35,103.27 paid to Riley Pendergraft on July 12, 2001; and (3) a July 12, 2001 letter from Kanaly Trust Company to Riley Pendergraft stating that it accompanied a check in the amount of $35,103.27. *Id.* (citing Pls. Mot. Exs. 3, 9, 10). Therefore, Plaintiffs have not established "a nexus between the mortgage proceeds and the imposition of tax on the proceeds." *Id.* at 19. Likewise, Plaintiffs have not established that the IRS taxed the alleged business commission deductions. *Id.* Plaintiffs have provided "a list of names and Mr. Pendergraft's 'account ledger,'" but they have not demonstrated that these commissions were ever taxed. *Id.* (referencing Pls. Mot. Exs. 2, 5).

In prior tax examinations, as well as in the current action, Plaintiffs have failed to provide complete and accurate records of their income and tax liability. *See NHUSS Trust* v. *Comm'r*, 90 T.C.M. (CCH) 374 ("During [the IRS]'s audit examination [for tax years 1999 and 2000], [Plaintiffs] did not provide . . . the requested books and records."); *see also* Gov't Ex. 19 (IRS Fourth Request for Information for Plaintiffs' 2001 tax examination, noting that the IRS had still not received all the information it had requested regarding Plaintiffs' 2001 income and tax liability). Therefore, "[i]t must be presumed that the 'silent' evidence that has infected all attempts to determine [Plaintiffs'] proper taxable income would be prejudicial to [Plaintiffs'] interests." Gov't Opp. & Cross Mot. at 19.

### 3. Plaintiffs' April 8, 2010 Reply.

Plaintiffs reply that the Government's portrayal of Plaintiffs as repeat tax evaders who refuse to cooperate with the IRS is exaggerated and misleading. Pls. Reply at 2-3. The Tax Court's opinion regarding Plaintiffs' 1999 and 2000 taxes found Plaintiffs liable for negligence, not willful tax fraud or tax evasion. *See NHUSS Trust* v. *Comm'r*, 90 T.C.M. (CCH) 374 (holding that Plaintiffs' "underpayments of Federal income taxes for 1999 and 2000 were due to negligence and that [Plaintiffs] are liable for the [26 U.S.C. § 6662(a)] negligence penalty for 1999 and 2000"). Moreover, any discrepancies between Plaintiffs' first (October 15, 2002 Form 1040) and second (April 10, 2006 Form 1040X) amended 2001 tax returns were the result of adjustments made pursuant to the IRS's audit and examination of Plaintiffs' returns. Pls. Reply at 4. Finally, Plaintiffs have not withheld any W-2 or 1099 Forms, as the Government alleged, because Plaintiffs do not receive W-2s and they do not issue 1099s to the salespeople to whom

they pay commissions. *Id.* at 5 ("Plaintiffs are not salaried employees and do not receive W-2's. With respect to 1099's request [sic] by the IRS, Plaintiffs have long advised the IRS that they do not issue 1099's to the salespeople to whom they paid commissions, and thus could not provide the IRS with copies of the same.").

As for the Government's argument regarding the mortgage refinancing proceeds, Plaintiffs deposited their half ($35,103.27) of the refinancing surplus into their bank account. *Id.* The fact that the entire amount of the surplus initially was deposited into Jeffrey Pendergraft's bank account—before Plaintiffs' half was sent to Plaintiffs' account—is irrelevant. *Id.* The Government's insistence that the $35,103.27 was not included and taxed as additional gross receipts is wrong, since "the IRS' tax examination records unequivocally state otherwise." *Id.* at 5-6. The IRS's own Fourth Request for Information for Plaintiffs' 2001 tax examination stated: "The deposits that **will be included** in gross receipts total . . . are as following: . . . , $35,103.27 7/23/01[.]" Pls. Reply Ex. F (emphasis in original). Therefore, this was an oversight and mistake by the IRS, not fraud or concealment by Plaintiffs. Pls. Reply at 8.

Finally, regarding the Government's assertion that Plaintiffs have not produced documents establishing deductible commission expenses, Plaintiffs insist that they "previously provided the IRS with cancelled checks representing commissions paid in 2001, and an account ledger." Pls. Reply at 8-9 (referencing Pls. Reply Ex. D (letter from Plaintiffs' lawyer to IRS referring to enclosed "verification of Commissions in the form of cancelled checks") and Pls. Mot. Ex. 5 (Plaintiff's Payroll and Cash Disbursement Journal)). Accordingly, Plaintiffs have provided sufficient evidence documenting both their mortgage refinancing proceeds and commission payments. *Id.*

### 4. The Government's April 30, 2010 Reply.

The Government replies that a "core principle" of the federal tax system is that taxpayers must be able to substantiate all elements of their tax liability and that this case is a "straightforward application" of that principle. Gov't Reply at 1. Plaintiffs have not and cannot establish that they had an overpayment for 2001, because they have not and cannot substantiate *all* aspects of their income tax liability for 2001. *Id.* at 2 (emphasis in original). Even if Plaintiffs presented evidence demonstrating that either the commission payments or mortgage refinancing proceeds improperly were taxed, "[P]laintiffs still have not established an overall overpayment of their 2001 tax liability, which is the controlling question." *Id.* at 9. Accordingly, Plaintiffs' lack of records and continuing efforts to obscure their finances for 2001 demonstrate that their claim for an overpayment is simply "the culmination of a multi-year effort to conceal their income." *Id.* at 3.

### D. The Court's Resolution.

In *Missouri Pacific Railroad Co.* v. *United States*, 168 Ct. Cl. 86 (1964), the predecessor court to the United States Court of Appeals for the Federal Circuit held that:

> When a suit is brought for the recovery of taxes, the taxpayer must affirmatively show that he has overpaid his taxes since an overpayment must appear before

refund is authorized. In other words, the taxpayer has the burden of proving the exact dollar amount to which he is entitled. *This of necessity puts in issue every credit or deduction found in the particular tax return for which refund is sought or in a related tax return.*

*Id.* at 671 (emphasis added) (internal citations omitted).

In *Mahoney* v. *United States*, 223 Ct. Cl. 713 (1980), however, the court clarified that *Missouri Pacific* dealt with setoffs that the Government might raise as a defense in a tax refund claim. *Id.* at 714. Therefore, the preceding language must be read in complete context:

[T]he government has the burden of going forward and showing that there is a reasonable basis in fact or in law for its setoff defense. By this we mean that the government has to demonstrate that it has some concrete and positive evidence, as opposed to a mere theoretical argument, that there is some substance to its claim and is not a mere fishing expedition or a method of discouraging taxpayers from seeking refunds on meritorious claims because of the cost that would result in proving each and every item involved in a tax return. In a case where the taxpayer raises specific issues as to a tax, and there is no good reason for the government to challenge the remainder of the items going to make up the tax, the government should not be able to cast the burden on the taxpayer of proving each and every item.

*Id.* at 714-715 (quoting *Mo. Pac.*, 338 F.2d at 671-72).

In this case, the Government is not asserting any setoff defense or that Plaintiff owes additional taxes on Plaintiffs' 2001 tax return. Instead, the Government argues that Plaintiffs are not entitled to their claimed tax refund, because they have not documented and established their entire tax liability for 2001. The Government's argument, however, is misplaced.[4] To succeed in this refund action, Plaintiffs are not required to prove each and every item involved in their 2001 tax return. *See Mahoney*, 223 Ct. Cl. at 714-15.

Therefore, the court's analysis will address the two items at issue—the mortgage refinance and commission expenses—presented in Plaintiffs' refund claim and May 2, 2008 Complaint. For the reasons discussed herein, the court has determined that: (1) Plaintiffs are entitled to summary judgment with respect to the mortgage refinance; but (2) neither party is entitled to summary judgment with respect to the commission expenses.

---

[4] The court would be remiss if it did not comment on the inappropriate tone of much of the Government's argument, including characterizing Plaintiffs as being engaged in a continuing "tax avoidance scheme." Gov't Opp. & Cross Mot. at 5; *see also id.* at 6-13. The IRS has not authorized a suit charging Plaintiffs with tax avoidance or fraud, and the innuendo and hyperbole by the Government's counsel is unfounded, entirely inappropriate, and completely irrelevant. The court assumes this style of advocacy will be abandoned in future filings.

1. **Plaintiffs Are Entitled To Summary Judgment With Respect To The Mortgage Refinance.**

The May 2, 2008 Complaint alleges that the IRS improperly taxed the $35,103.27 surplus of Plaintiffs' non-taxable mortgage refinance. Compl. ¶ 24. The controlling law is not in dispute—funds received from a mortgage refinance are not taxable. *See* Gov't Opp. & Cross Mot. at 18 (The Government "does *not* assert that funds received from a mortgage refinancing are taxable.") (emphasis in original). Loan proceeds are not considered gross income, because the borrower's obligation to repay the loan offsets any temporary economic benefit the borrower may derive from it. *See Comm'r* v. *Indianapolis Power & Light Co.*, 493 U.S. 203, 210 (1990) ("In determining whether a taxpayer enjoys 'complete dominion' over a given sum, . . . [t]he key is whether the taxpayer has some guarantee that he will be allowed to keep the money."); *see also United States* v. *Rochelle*, 384 F.2d 748, 751 (5th Cir. 1967) ("A loan does not in itself constitute income to the borrower, because whatever temporary economic benefit he derives from the use of the funds is offset by the corresponding obligation to repay them.") (citing *James* v. *United States*, 366 U.S. 213, 219 (1961)).

In addition, Plaintiffs have produced sufficient evidence establishing that, on July 12, 2001, Plaintiff Riley Pendergraft received a check for $35,103.27, representing one-half of the mortgage refinancing proceeds. Pl. Mot. Ex. 10 (letter from Kanaly Trust Company); *see also* Gov't Ans. ¶ 23 ("[The Government] admits Riley Pendergraft received $35,103.27 from the proceeds of the property refinancing."). In addition, Plaintiffs' Reply Exhibit F (IRS Fourth Request for Information) demonstrates that the $35,103.27 from Plaintiffs' mortgage refinance was taxed. *See* Pls. Reply Ex. F ("The deposits that **will be included** in gross receipts total . . . are as following: . . . , $35,103.27 7/23/01[.]") (emphasis in original). After initially arguing that Plaintiffs had not demonstrated that the refinancing ever was taxed (Gov't Opp. & Cross Mot. at 18), the Government conceded that "this evidence [Pls. Reply Ex. F] may indicate that the mortgage refinance proceeds were included in [Plaintiffs'] gross income." Gov't Reply at 9. Therefore, even after drawing all justifiable inferences in favor of the non-moving party, no reasonable fact-finder could find for the Government with respect to the mortgage refinance. *See Liberty Lobby, Inc.*, 477 U.S. at 249 ("[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.").

Therefore, the court has determined that there is no genuine issue as to any material fact, and Plaintiffs are entitled to judgment as a matter of law. *See Moden*, 404 F.3d at 1342. Accordingly, Plaintiffs' Motion For Summary Judgment is granted with respect to the mortgage refinance.

2. **Neither Party Is Entitled To Summary Judgment With Respect To The Commission Expenses.**

Plaintiffs' May 2, 2008 Complaint also alleges that the IRS improperly denied a $7,054.14 deduction for commission payments arising from Plaintiffs' furniture business. Compl. ¶ 21. Similar to the mortgage refinance discussion above, the law on this issue is also clear. Section 162(a) of the Internal Revenue Code provides, in relevant part: "There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the

taxable year in carrying on any trade or business, including-- (1) a reasonable allowance for salaries or other compensation for personal services actually rendered." 26 U.S.C. § 162(a). Therefore, if the $7,054.14 amount was paid for commission expenses arising from Plaintiffs' furniture business, this amount is deductible.

The predicate facts, however, are in dispute. Plaintiffs assert that the $7,054.14 in question went to commission payments for their furniture business. Compl. ¶ 19. The Government argues that there is no proof that the money was actually paid for commission expenses or that the money was ever taxed as such. Gov't Opp. & Cross Mot. at 19. The Government contends that, although Plaintiffs have presented a bank statement and an account ledger/business log, these documents do not establish that the money was actually paid for tax-deductible business commissions. *Id.*

The evidence in the record is not sufficient for either party to carry their initial burden of demonstrating the absence of any genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at 325. The dispute over whether the $7,054.14 amount was actually paid for commission expenses is a material issue, the resolution of which will directly affect the outcome of the suit. *See Liberty Lobby, Inc.*, 477 U.S. at 247-48. Accordingly, both parties' Motions For Summary Judgment are denied with respect to the commission expenses.

## IV. CONCLUSION.

For the foregoing reasons, the court hereby grants-in-part and denies-in-part Plaintiffs' Motion For Summary Judgment, and denies the Government's Cross-Motion For Summary Judgment, as follows:

(1) Plaintiffs' Motion For Summary Judgment is granted with respect to the mortgage refinance, but otherwise is denied.

(2) The Government's Cross-Motion For Summary Judgment is denied.

On or before August 31, 2010, in accordance with the August 21, 2008 JPSR, the parties will file a joint status report indicating whether the parties have agreed on the money judgment amount to satisfy the court's ruling herein and whether this case should proceed to trial with respect to the commission expenses claim.

**IT IS SO ORDERED.**

s/ Susan G. Braden
**SUSAN G. BRADEN**
**Judge**